[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-13411
Non-Argument Calendar

————————————————

Agency No. A088-303-494

CAROLA BEATRIZ BELLORIN URDANETA,
JOHANNA ELIZABETH ANDA BELLORIN,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(May 16, 2014)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Carola Beatriz Bellorin Urdaneta, along with her daughter Johanna Elizabeth Anda Bellorin, both natives and citizens of Venezuela, seek review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of Bellorin Urdaneta's application for asylum and withholding of removal based on an adverse credibility determination. After careful review, we deny Bellorin Urdaneta and Anda Bellorin's petition.

## I.  BACKGROUND

### A.    November 2007 Entry

In November 2007, Bellorin Urdaneta and her minor daughter Anda Bellorin entered the United States on B2 nonimmigrant visitor visas, with authorization to remain in the United States through May 14, 2008.

### B.    March 27, 2008 Asylum Application and Recommended Approval

On March 27, 2008, Bellorin Urdaneta filed an application for asylum and withholding of removal, listing Anda Bellorin as a derivative beneficiary. Because Anda Bellorin is a derivative beneficiary, we will refer primarily to Bellorin Urdaneta.

Bellorin Urdaneta's application sought relief on the basis of political opinion. She filed a written statement and numerous documents.

The IJ denied Bellorin Urdaneta relief based on an adverse credibility finding. In finding Bellorin Urdaneta not credible, the IJ found that: (1) three

2

documents Bellorin Urdaneta submitted in support of her asylum application were fraudulent; (2) Bellorin Urdaneta's testimony concerning those documents was not credible; and (3) inconsistencies existed between her written statement and her testimony at the merits hearing.  We first review her written statement.

## C.    2008 Written Statement

In the statement attached to her application, Bellorin Urdaneta said that: (1) she was an active member of Venezuela's Democratic Action Political Party ("DAPP") from 1988 to 2005; (2) she became an active member of Venezuela's New Time Party in 2005; (3) she would be killed if she returned to Venezuela because its government's database system classified her as an opponent of then-President Hugo Chavez; and (4) "Chavez Sympathizers" persecuted her from 2003 until she left Venezuela in 2007.

To support her persecution claim, Bellorin Urdaneta described nine incidents. The first three incidents were in 2003 and 2004, as follows: (1) in January 2003, she participated in a political march, which was stopped by Venezuelan National Guardsmen, who sprayed Bellorin Urdaneta and other marchers with tear gas; (2) in March 2003, unknown individuals called Bellorin Urdaneta and her father (who was also involved with the DAPP) "Chavez

3

Traitors," hit Bellorin Urdaneta in the face, and hit her father in the stomach;[1] and (3) in February 2004, she participated in another political march, which turned into a riot when the "Bolivarian Circles"[2] began shooting and throwing rocks and bottles at the marchers, and she fell and fractured her hand.

The next three incidents were in 2005, as follows: (1) during a July 30, 2005 political march, the "Tupamaros"[3] and "Chavez Sympathizers" beat her; (2) on August 2, 2005, while in her car, she was shot at by a group of "armed men" and was later taken to the emergency room to have pieces of glass removed from her arms; and (3) on November 7, 2005, while she was out walking, a group of "Chavistas" beat her, and as a result of that attack, she suffered a broken nose, which required surgery.

The next two incidents were these in 2006: (1) on June 15, 2006, while she was demonstrating on a street, a group of men on motorcycles rode by her, yelled, "Bellorin Chavez traitors will suffer," and threw something in her face, which caused an eye infection; and (2) on December 3, 2006, as she was driving home from an electoral event, "Chavez Sympathizers" surrounded Bellorin Urdaneta's

---

[1]Bellorin Urdaneta's father was rushed to the hospital for treatment, but, a week later, on March 22, 2003, he died.

[2]As Bellorin Urdaneta later testified, the "Bolivarian Circles" are "organizations that the [Venezuelan] government forms to attack the people who are against the regime."

[3]The State Department's 2009 Human Rights Report on Venezuela states that "Los Tupamaros" is a pro-government militant group that frequently issues threats against opposition figures.

4

car, smashed her car windows with heavy pipes, pulled her out of the car, and threw her to the ground, which caused her head to hit the ground.

The final incident was on August 8, 2007, when three "Chavez Sympathizers" attacked her and her companion as they left a political party's headquarters. The "Chavez Sympathizers" knocked Bellorin Urdaneta's companion unconscious with a gun, grabbed Bellorin Urdaneta, and started ripping off her clothes. Although attempting to rape Bellorin Urdaneta, her attackers fled when a group of people came out of the party's headquarters. This incident caused Bellorin Urdaneta so much stress that she was diagnosed with irritable bowel syndrome.

**D.    Three Documents**

In support of her asylum application, Bellorin Urdaneta also filed documents, including one from 2003 and two from 2005, as follows: (1) a letter from DAPP, dated March 26, 2003, stamped with the words "Accion Democratica," and certifying Bellorin Urdaneta's militant status in the party since 1988 ("March 2003 DAPP Letter"); (2) a letter from Policlinica Las Mercedes, issued on August 2, 2005, and stating that Bellorin Urdaneta was treated for "multiple subcutaneous wounds caused by fragments of glass in the arms, produced after having suffered an attack in her vehicle" ("August 2005 Treatment Letter"); and (3) a medical report from Policlinica Metropolitana, issued on

5

November 7, 2005, and stating that Bellorin Urdaneta underwent surgery on her nose due to "nasal traumatism" caused by hitting the ground when attacked ("November 2005 Surgery Letter").

Bellorin Urdaneta claims that: (1) she obtained, in Venezuela, the originals of the three documents and (2) she gave those three original documents to the preparer of her asylum application, Barbara Branks.

**E.      May 2008 Recommended Approval**

In May 2008, Bellorin Urdaneta's asylum application was recommended for approval, pending a confidential investigation into her identity and background.

**F.      April 30, 2009 Cancellation of Recommended Approval**

On April 30, 2009, almost a year later, Bellorin Urdaneta's recommended approval was cancelled because Barbara Branks, the individual who prepared Bellorin Urdaneta's asylum application, was being investigated for making false statements in asylum applications.

Branks later pled guilty to making false statements in asylum applications. The government filed Branks's plea agreement for the IJ's consideration.  The factual basis in Branks's plea agreement stated that: (1) Branks prepared fraudulent immigration documents for individuals who were otherwise ineligible to obtain immigration benefits; (2) Branks fabricated the immigration documents by using templates on her computer and a printer; (3) Branks's clients knew that the

6

immigration documents prepared by Branks were fraudulent; (4) the immigration documents were often stamped with fraudulent stamps, including a stamp with the inscription "Accion Democratica"; (5) Branks had prepared approximately 272 asylum applications; and (6) "most, if not all, of the applications for asylum were fraudulently made."

## G.    April 30, 2009 Notice to Appear

On April 30, 2009, the same day that the recommended approval of Bellorin Urdaneta's application was cancelled, the U.S. Department of Justice served Bellorin Urdaneta with a Notice to Appear ("NTA"), charging her as removable pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for having remained in the United States for a longer time than permitted.

Bellorin Urdaneta admitted the factual allegations in the NTA and conceded removability.

## H.    November 2010 Merits Hearing on Asylum Application

At the November 2010 merits hearing, Bellorin Urdaneta testified that she fled Venezuela to escape persecution by the Bolivarian Circles.  Bellorin Urdaneta testified that, if she returned to Venezuela, the government and its supporters would "continue persecuting [her], first of all for being a politician's daughter in Venezuela, and for participating in parties that are against the regime."  Bellorin Urdaneta's father was a politically active individual who served as a DAPP

7

congressman, the president of social security, and the ambassador to Ecuador. Bellorin Urdaneta also submitted evidence as to her father's political activism.

Bellorin Urdaneta's oldest brother had asylum approval in the United States, but she did not have a copy of his asylum approval notice because she had a bad relationship with him. She admitted, however, that her brother provided her with the documentary evidence regarding their father's political activism. Bellorin Urdaneta later clarified that she had not obtained that documentary evidence directly from her brother; rather, her mother had obtained it on Bellorin Urdaneta's behalf.

On cross-examination, the government showed Bellorin Urdaneta uncertified copies of the above three documents she submitted with her asylum application: (1) the March 2003 DAPP Letter; (2) the August 2005 Treatment Letter; and (3) the November 2005 Surgery Letter. Bellorin Urdaneta testified that each document was an original she brought with her from Venezuela.

The government then submitted a report by the Department of Homeland Security's Forensic Document Laboratory ("FDL"), which stated that Bellorin Urdaneta's three documents were fraudulent and actually produced on a color copy machine in Gainesville, Florida, rather than in Venezuela.

Bellorin Urdaneta then testified that she gave Branks the original documents from Venezuela so that Branks could prepare Bellorin Urdaneta's asylum

8

application.  Before Bellorin Urdaneta's asylum interview, Branks returned the documents to Bellorin Urdaneta in a sealed envelope and instructed Bellorin Urdaneta not to open the envelope unless the asylum officer requested it.  At her asylum interview, Bellorin Urdaneta opened the envelope and handed the documents to the asylum officer.  Bellorin Urdaneta testified that she did not change any of the documents and she had no knowledge of anyone else changing them.  Furthermore, Bellorin Urdaneta thought that the documents she handed the asylum officer at her interview were the originals, based on the logos on the documents.

Bellorin Urdaneta's counsel objected to the admission of the FDL's report into evidence because (1) he had "no time to prepare" and (2) Bellorin Urdaneta had a right to cross-examine the report's preparer.  The IJ continued the hearing to allow Bellorin Urdaneta's counsel the opportunity to cross-examine the forensic examiner who prepared the FDL's report and to engage an independent forensic expert to conduct a separate review of the three documents.

Prior to the continued merits hearing, Bellorin Urdaneta's counsel filed a motion that explicitly stated that the FDL's report could be considered to show that the documents submitted with her asylum application were, in fact, fraudulent. However, Bellorin Urdaneta opposed the FDL's report being considered for the

9

purpose of demonstrating that she had <u>knowingly</u> submitted such fraudulent documents.

At the continued merits hearing, however, Bellorin Urdaneta's counsel (1) did not seek to cross-examine the forensic examiner and (2) stated that Bellorin Urdaneta would not engage an independent forensic expert to conduct a separate review of the documents at issue because she could not afford to hire such an expert.

## I.    January 26, 2012 IJ Decision

The IJ issued a written decision denying Bellorin Urdaneta's claims for asylum and withholding of removal.  The IJ made an adverse credibility determination and gave these reasons:

First, the IJ found that (1) Bellorin Urdaneta provided no evidence to counter the FDL's report and (2) it was implausible that Bellorin Urdaneta gave Branks <u>original</u> documents from Venezuela, as Bellorin Urdaneta testified, and then Branks somehow forged those same documents before placing them in a sealed envelope for Bellorin Urdaneta's asylum interview.  The IJ thus found inconsistencies between (1) the FDL's report indicating Bellorin Urdaneta's documents were false and (2) Bellorin Urdaneta's testimony that she did not knowingly submit fraudulent documents.

The IJ also found inconsistencies between Bellorin Urdaneta's written statement and testimony because: (1) her written statement referred to the Bolivarian Circles as "Tupamaros" and "Chavistas," but she did not use those same terms in her oral testimony; (2) her written statement provided that, on June 15, 2006, the Bolivarian Circles attacked her by throwing chemicals in her eyes, but she testified that this incident occurred on August 30, 2006; and (3) her written statement referenced her diagnosis with irritable bowel syndrome after the attempted rape by the Chavistas, but she omitted that fact in her testimony and instead testified that she was treated by a family doctor who prescribed pills to calm her down.

The IJ further found that: (1) Bellorin Urdaneta's testimony—that her bad relationship with her brother prevented her from obtaining his asylum approval notice—was inconsistent with the fact that she was able to obtain her brother's documentary evidence regarding their father's political activism;  (2) the fact that Bellorin Urdaneta was able to freely travel from Venezuela and enter the United States on a B2 nonimmigrant visitor visa was inconsistent with her testimony that she was in all the database systems in Venezuela as an opponent of President Chavez; and (3) Bellorin Urdaneta's testimony failed to explain how her attackers were able to consistently identify her over a span of four years, from 2003 to 2007, on so many different occasions.

Because Bellorin Urdaneta lacked credibility, the IJ found that Bellorin Urdaneta failed to prove past persecution. Primarily due to Bellorin Urdaneta's lack of credibility, the IJ found that Bellorin Urdaneta also failed to prove a well-founded fear of future persecution. The IJ concluded that Bellorin Urdaneta failed to demonstrate entitlement to asylum or to withholding of removal.

## J.    February 2012 BIA Appeal and July 2, 2013 Decision

In February 2012, Bellorin Urdaneta appealed the IJ's decision, on the grounds that the IJ erred in finding that: (1) Bellorin Urdaneta was not credible in her account of her 2003-2007 persecution in Venezuela, (2) Bellorin Urdaneta failed to prove past persecution, and (3) Bellorin Urdaneta failed to prove a well-founded fear of future persecution. Bellorin Urdaneta also filed a copy of her brother's asylum approval for the BIA's consideration. Bellorin Urdaneta claimed that her mother obtained the approval notice from her brother on Bellorin Urdaneta's behalf.

On July 2, 2013, the BIA affirmed the IJ's decision. The BIA determined that, based on the totality of the circumstances, there was no clear error in the IJ's credibility finding. The BIA concluded that, in the absence of credible testimony or other evidence independently establishing Bellorin Urdaneta's burden of proof,

12

Bellorin Urdaneta failed to satisfy the burden of proof for asylum and withholding of removal.[4]

## II.  STANDARD OF REVIEW

We review only the opinion of the BIA, except to the extent that the BIA adopted the IJ's decision.  Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230 (11th Cir. 2006).  To the extent that the BIA agreed with the IJ's reasoning, we review both the BIA's and the IJ's decisions.  See id.

We review the BIA's factual findings to determine whether they are supported by substantial evidence.  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  Id. at 1027.  We may reverse the BIA's factual findings only when the record so compels.  Id.

"We review constitutional challenges, including alleged due process violations, de novo."  Alhuay v. U.S. Att'y Gen., 661 F.3d 534, 548 (11th Cir. 2011) (quotation marks omitted).

## III.  ASYLUM ELIGIBILITY

To establish asylum eligibility, an alien must show, with specific and

---

[4]The IJ and the BIA also denied Bellorin Urdaneta relief under the United Nations Convention Against Torture ("CAT").  However, Bellorin Urdaneta does not challenge the denial of CAT relief.  Therefore, she has abandoned that claim.  See Carrizo v. U.S. Att'y Gen., 652 F.3d 1326, 1330 n.1 (11th Cir. 2011).

credible evidence, a "well-founded fear" of future persecution on account of one of the statutorily listed factors, such as the alien's political opinion. INA § 101(a)(42), 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 208.13(a)-(b); see Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005). "Establishing a history of past persecution creates a presumption that an alien has a well-founded fear of future persecution, although that presumption can be rebutted by the government." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005).

An applicant's testimony, if credible, may be sufficient to sustain her burden of proof, without corroborating evidence. Id. at 1287. Conversely, if the applicant relies solely on her testimony, an adverse credibility determination may alone be sufficient to support the denial of an application. Id. "If, however, the applicant produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." Id.

An adverse credibility determination may be based on inconsistencies, inaccuracies, or falsehoods, regardless of whether they relate to the heart of an applicant's claim. INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). When the IJ makes an adverse credibility finding, the applicant must demonstrate that the "decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir.

14

2006) (alterations omitted).  The fact that the applicant provides "tenable" explanations for the doubtful portions of her testimony does not compel reversal, particularly in the absence of corroborating evidence.  Chen, 463 F.3d at 1233.

In this case, the IJ articulated several specific, cogent reasons in support of her adverse credibility finding.  And, Bellorin Urdaneta has not shown that the record compels reversal of the IJ's adverse credibility finding.

First, the record does not compel reversal of the IJ's finding that it is implausible that Bellorin Urdaneta would submit authentic, original documents to Branks (as Bellorin Urdaneta testified), and that Branks would then forge versions of those same documents to submit on Bellorin Urdaneta's behalf without her knowledge.  Thus, as the IJ found, Bellorin Urdaneta's testimony—that she did not know that the documents submitted were fraudulent—was inconsistent with the FDL's report.  Furthermore, even assuming Bellorin Urdaneta offered a tenable explanation for the inconsistency between her testimony and the FDL's report, that explanation still would not compel a conclusion that Bellorin Urdaneta was credible.  See Chen, 463 F.3d at 1233 (holding that, while the applicant offered a "tenable" explanation for inconsistencies in her testimony, it did not compel reversal of the IJ's adverse credibility determination).

Further, as the IJ found, there were multiple inconsistencies regarding the details of Bellorin Urdaneta's attacks throughout 2003 to 2007.  And, as we have

15

stated, even one internal inconsistency and one omission may justify an adverse credibility determination.  See Xia v. U.S. Att'y Gen., 608 F.3d 1233, 1240-41 (11th Cir. 2010) (holding that an adverse credibility determination was supported where the applicant's testimony "included at least one internal inconsistency . . . and one omission").

Given all of these inconsistencies discussed above, we conclude that substantial evidence supports the IJ's adverse credibility finding.  And, the remaining evidence in the record does not compel a reversal of the BIA's decision that Bellorin Urdaneta had not established asylum eligibility.  See Sepulveda, 401 F.3d at 1230-31.[5]

## IV.  DUE PROCESS

Petitioners in removal proceedings are entitled to due process, and "[d]ue process is satisfied only by a full and fair hearing."  Alhuay, 661 F.3d at 548 (quotation marks omitted).  Here, Bellorin Urdaneta argues that the government violated her due process rights when it: (1) showed her uncertified copies of the fraudulent documents, and (2) questioned her about those documents, even though

---

[5]An applicant for withholding of removal must show it is more likely than not that she will be persecuted based on a protected ground.  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); 8 C.F.R. § 208.16(b).  Because this standard for establishing eligibility for withholding of removal is higher than the standard for establishing asylum eligibility, an applicant who, like Bellorin Urdaneta, fails to meet the burden of proof for asylum necessarily fails to establish entitlement to withholding of removal.  See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004).

she was not a forensic expert who could easily distinguish between original and fraudulent documents.[6]

We fail to see how the government violated Bellorin Urdaneta's due process rights.  Bellorin Urdaneta has not claimed that there is a discrepancy between the uncertified copies of the fraudulent documents the government showed her and the original fraudulent documents, despite Bellorin Urdaneta being provided with an opportunity to have her own expert examine the original fraudulent documents. And, Bellorin Urdaneta was given a continuance and an opportunity to cross-examine the preparer of the FDL's report, but Bellorin Urdaneta declined to do so. Finally, the government questioned Bellorin Urdaneta only about her own personal knowledge regarding the fraudulent documents' source, questions she was qualified to answer.  Because we conclude that Bellorin Urdaneta was provided a full and fair hearing, we reject her due process claim.

We also reject Bellorin Urdaneta's argument that the government did not comply with the requirements of INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), for removal based on fraud or misrepresentation.  The BIA

---

[6]Although the BIA did not address Bellorin Urdaneta's exhausted due process claim, Bellorin Urdaneta does not ask for a remand to the BIA to do so in the first instance.  In any event, we need not remand to the BIA to address it in the first instance because her due process claim presents a "purely legal" question.  See Ortiz-Bouchet v. U.S. Atty. Gen., 714 F.3d 1353, 1357 n.5 (11th Cir. 2013) (declining to remand to the BIA on a question of statutory interpretation because the issue was "purely legal"); Calle v. U.S. Att'y Gen., 504 F.3d 1324, 1329-30 (11th Cir. 2007) (declining to remand where the undecided issue was "an objective, procedural inquiry" and a legal, not factual, issue).

17

correctly decided that the requirements did not apply because Bellorin Urdaneta

was not found removable under INA § 212(a)(6)(C)(i), 8 U.S.C.

§ 1182(a)(6)(C)(i).  Instead, she was found removable under INA § 237(a)(1)(B), 8

U.S.C. § 1227(a)(1)(B), for having remained in the United States for a longer time

than permitted.

## V.  CONCLUSION

For all the foregoing reasons, we deny Bellorin Urdaneta's petition for

review.

**PETITION DENIED.**